UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES**, <br><br> Plaintiff, <br><br> v. <br><br> **MICHAEL GRIFFIN, et al.,** <br><br> Defendants. | 2:17-CR-20639-TGB-MKM <br> HON. TERRENCE G. BERG <br><br><br> **ORDER RESOLVING DEFENDANTS' PRETRIAL MOTIONS (ECF NOS. 167, 176, 177, 178 180)** |

This criminal case involves charges of drug trafficking, conspiracy, carrying firearms in furtherance of drug trafficking and violent crimes, and murder.[1]

---

[1] The Third Superseding Indictment charges Defendants Michael Griffin, Dennis Epps, and Mariano Garcia with: (1) Interstate Travel with the Intent to Kill, Injure or Harass in violation of 18 U.S.C. §§ 2261A(1) and 2261(b)(1) as well as aiding and abetting the same in violation of 18 U.S.C. § 2; (2) Use and Carry of a Firearm During and in Relation to, a Crime of Violence Causing Death, specifically the offense charged in Count One, in violation of 18 U.S.C. §§ 924(c) and 924(j) and aiding and abetting; (3) Interstate Travel in Aid of Unlawful Activity in violation of 18 U.S.C. § 1952 and aiding and abetting; (4) Use and Carry of a Firearm During and in Relation to, a Crime of Violence Causing Death, specifically the offense charged in Count Three, in violation of 18 U.S.C. §§ 924(c) and 924(j) and aiding and abetting; (5), along with two other Defendants, Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine and Heroin in violation of 21 U.S.C. §§ 846, 841(A)(1), 841(b)(1)(A)(ii), and 841(b)(1)(C); (6) Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, specifically the

Before the Court are several motions filed by Defendants. Specifically,

- Defendants Griffin and Epps move to dismiss Counts Two, Three, and Four (ECF Nos. 167, 180);

- Defendant Griffin moves to strike certain sentencing allegations found in Count Five. (ECF No. 167);

- Defendant Garcia asks the Court to dismiss the firearm-related counts—Counts Two, Four, and Six—or, in the alternative, to order the Government to select only one of those counts upon which to proceed. (ECF No. 176);

- Defendant Garcia also asks the Court to order the Government to preserve and turn over certain discovery materials (ECF Nos. 177, 178).

Having reviewed the parties' briefs, the relevant case law, and heard oral argument on the issues, the Court concludes that Defendants Griffin and Epps' Motions to Dismiss Counts Two, Three, and Four (ECF Nos. 167, 180) will be **DENIED**. While Count Three need not be dismissed as Griffin and Epps request (*see* ECF Nos. 167, 180), the Government will be **ORDERED** to file a bill of particulars specifying the crime of violence contemplated by Count Three. The portion of Griffin's

---

offense charged in Count Five, and aiding and abetting; and (7) along with one other Defendant, Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i) and 1956(h).

Motion (ECF No. 167) regarding the sentencing allegations contained in Count Five will be **DENIED WITHOUT PREJUDICE**. Defendant Garcia's Motion to Dismiss Counts Two, Four, and Six (ECF No. 176) will be **DENIED WITHOUT PREJUDICE**. Finally, Defendant Garcia's Motion to "Reveal the Deal" (ECF No 178) and Motion to Preserve Notes (ECF No. 177) will be **DENIED AS MOOT**.

## I. BACKGROUND

Many of the facts described below are taken from the Government's brief; they do not represent any finding by the Court and should be considered as allegations. The recitation below is offered to provide context to the parties' legal arguments, not to suggest any findings of fact or conclusions concerning the alleged conduct of the accused Defendants.

According to the Government, Defendants Troy Harris, Mariano Garcia, and Ruben Valdez began trafficking cocaine in Detroit in June, 2016. ECF No. 189, PageID.914. Coincidentally at the same time, Defendant Michael Griffin and his best friend, Robert Eddins IV, came to Detroit from Alabama to visit Harris, with whom Griffin had spent time in prison. *Id.* During that visit, Harris introduced Griffin to Garcia, who was Harris' drug supplier. *Id.* at PageID.914-915. After their initial meeting, Garcia allegedly met with Griffin and Eddins several times in Texas and Alabama, providing Griffin and Eddins with three to six kilograms of cocaine every two weeks "on consignment," with Griffin and

Eddins paying Garcia for the drugs after they were sold. *Id.* at PageID.916.

This distribution relationship allegedly broke down in early November 2016, when it became clear that Eddins would be unable to repay Garcia for some of the cocaine Garcia had fronted to the pair. *Id.* at PageID.917. According to the Government, Garcia was pressuring Griffin because of Eddins' failure to produce the money he owed Garcia. *Id.* Tensions mounted between all three men and, at the end of November, Griffin ultimately paid Garcia at least some of the money that Eddins owed Garcia, apparently in an effort to salvage Griffin's own relationship with Garcia. *Id.* at PageID.917-18. After the end of November, 2016, Eddins purchased a new phone, returned to Detroit, and stopped communicating with either Griffin or Garcia. *Id.*

Over the first two weeks of December, Griffin allegedly sought information about Eddins' whereabouts from mutual friends. *Id.* at PageID.918-19. At the same time, Garcia was explaining to Griffin in near-daily text messages that Garcia was now coming under pressure from unspecified others. *Id.* On December 18, Defendants Griffin and Dennis Epps, an associate of Griffin whose role is otherwise unexplained, allegedly left Alabama and travelled to Detroit. *Id.* Throughout the trip to Detroit, Griffin and Garcia were allegedly in constant contact. *Id.* At some point, Griffin and Epps' search for Eddins was successful: on December 19, video of Griffin, Epps, Eddins, and a fourth person was

4

captured on a Walmart surveillance camera in Livonia, Michigan. *Id.* at PageID.920. Griffin and Epps' cellphones were also identified as being near Eddins' residence from around 9:30 p.m. on December 19 to 1:20 a.m. on December 20. *Id.* at PageID.920-22. Phone location records allegedly show that Griffin and Epps left Eddins' residence separately. *Id.* Around 4:00 a.m., on December 20, Griffin picked up Epps and the pair drove back to Birmingham, Alabama. *Id.* Later that day, in the evening, Robert Eddins and another man, Ricardo McFarlin, were found shot to death in the basement of Eddins' home. *Id.* at PageID.923.

Approximately two weeks after Eddins' death, Griffin, Epps, and another person were stopped by Louisiana state troopers while travelling along the highway in a rented car.[2] The state troopers, investigating a potential traffic violation, discovered what was believed to be heroin in the vehicle, and all three were arrested. *Id.* at PageID.931. Although the suspected heroin was later determined not to be heroin or any other controlled substance, police discovered, upon subsequent searches of the rental car, a firearm and what appeared to be the jackets that Eddins and Griffin were wearing on the Walmart surveillance tape. *Id.* at PageID.931-32.

---

[2] The legality of that traffic stop is discussed in ECF No. 237.

## II. ANALYSIS

### a. Whether Count Two must be dismissed on the ground that interstate stalking in violation of 18 U.S.C. § 2261A resulting in death does not constitute a crime of violence

Count Two of the Third Superseding Indictment charges Defendants Griffin, Epps, and Garcia with violating 18 U.S.C. § 924(c) by using a firearm during a predicate "crime of violence." To qualify as a "crime of violence," the predicate offense must have as an element "the use, attempted use, or threatened use of physical force against the person or property of another." § 924(c)(3)(A). To determine whether a predicate offense qualifies as a crime of violence under this "categorical approach," courts focus on the elements of the generic offense itself, and not the particular facts of the case at hand. *Knight v. United States*, 936 F.3d 495, 498 (6th Cir. 2019). Courts look to the "minimum criminal conduct necessary for conviction" under the statute to determine whether a statute may be violated without the use or threatened use of force, but do not apply "legal imagination"—that is, "there must be a realistic probability, not a theoretical possibility" that the statute could be applied to conduct that is not a crime of violence. *United States v. Hill*, 890 F.3d 51, 55-56 (2d Cir. 2018)(citation and quotation marks omitted).

When a statute contains multiple versions of the same crime that consist of alternate elements or provide for different punishments, it is

6

referred to as a "divisible" statute, and a court must "look beyond the statutory language and examine a limited set of documents" such as the indictment, to determine which portion of the statute a defendant violated, and whether conviction under *that portion* of the statute would require proof that the defendant used, attempted to use, or threatened the use of physical force. *United States v. Gooch*, 850 F.3d 285, 291 (6th Cir. 2017).

Defendants argue that the predicate offense charged in Count One does not qualify as a crime of violence. That offense is 18 U.S.C. § 2261A, which criminalizes interstate stalking. Here, that offense is coupled with § 2261(b), which provides enhanced penalties if the stalking results in death. The version of that statute in effect at the time of the offense provided in relevant part that:

> Whoever (1) travels in interstate or foreign commerce . . . with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, and in the course of, or as a result of, such travel or presence engages in conduct that
> > (A) places that person in reasonable fear of the death of, or serious bodily injury to (i) that person . . .
> shall be punished as provided in section 2261(b) . . ..

18 U.S.C. § 2261A.

Section 2261(b) provides that a person who violates 2261A faces four increasing maximum penalties depending on the nature of the injury caused by the conduct. A violator of § 2261A shall be imprisoned "for life or any term of years, if death of the victim results," 18 U.S.C. § 2261(b)(1);

7

for not more than 20 years "if permanent disfigurement or life threatening bodily injury to the victim results;" for not more than ten years if serious bodily injury results or if the offender uses a dangerous weapon; or for not more than five years in any other case. § 2261(b)(2-5). Because this "death resulting" requirement increases the maximum penalty to which a defendant convicted of interstate stalking may be subject, it is an "element" that must be submitted to a jury and found beyond a reasonable doubt. *See Burrage v. United States*, 571 U.S. 204, 210 (2014)("Because the 'death results' enhancement [of a drug offense] increased the minimum and maximum sentences to which [the defendant] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt.")(citing *Alleyne v. United States*, 570 U.S. 99, 115-116 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Accordingly, because the statute imposes different penalties based on whether or not "death resulted," this is a "divisible" statute. *See Knight v. United States*, 936 F.3d 495, 498-99 (6th Cir. 2019)(assault statute was divisible where it included an aggravated offense with an increased penalty for wounding victim or putting victim's life in danger by use of a dangerous weapon); *United States v. Wheeler*, 483 F. Supp. 3d 505, 510 (N.D. Ohio 2020)(destruction of motor vehicle statute was divisible due to inclusion of "death results" element)(collecting cases).

Therefore, the Court must consider a "limited set of documents," including the Indictment, to determine what part of the statute Defendants allegedly violated. *Gooch*, 850 F.3d at 291. Here, the Indictment specifically charges Defendants with a violation of § 2261A resulting in death, invoking the language of § 2261(b). *See* Third Super. Ind., ECF No. 123, PageID.469-70. Therefore, the portion of § 2261A at issue in this case, and to which the Court must apply the "modified categorical" crime of violence analysis, is that which includes the element of death resulting from engaging in conduct that places that person in reasonable fear of death or bodily injury in the course of or as the result of travel in interstate commerce with intent to kill, injury, harass, or intimidate another person. 18 U.S.C. §§ 2261A, 2261(b).

Defendants contend that § 2261A can be violated in a manner causing death with either unintentional use of physical force, or with no physical force at all, and thus is categorically not a crime of violence. Defendants argue that the most innocent way the statute may be violated is by a person traveling with intent to harass another. Def's. Mot., ECF No. 167, PageID.696. Defendants argue that the statute's language—that the travel "result in" the victim's death—does not require any additional *mens rea.* Defendants hypothesize that "one may be convicted under § 2261A by traveling across state lines and harassing the victim, who then dies of a heart attack or who has a fatal fall as he runs from the

defendant who is verbally harassing him. This can be done without the intentional use of force." *Id.* at PageID.697 (emphasis omitted).

The Government responds that the Court should not look to whether each element involves the use of force, but rather whether the offense "overall include[s] use of violent force." Gov't. Resp., ECF No. 189, PageID.940 (quoting *United States v. Harris*, 853 F.3d 318, 322 (6th Cir. 2017)). The Government points out that to satisfy the statute, the defendant must "engage[] in conduct that … places [the victim] in reasonable fear of the death of, or serious bodily injury and results in death," which necessarily involves the "threat" of violent force. ECF No. 189, PageID.940-41. The government also argues that there is no realistic probability that the statute would be enforced in the manner the Defendants hypothesize, and that to do so would be an exercise in "legal imagination"—the use of which courts have repeatedly discouraged. *Id.* at PageID.941-42.

Two federal district courts have considered whether various versions of § 2261A qualify as crimes of violence, and have reached opposing conclusions. An Oklahoma district court, applying the categorical approach, concluded that a prior version of § 2261A was not a crime of violence:

> There is a travel element, which does not include the use, attempted use, or threatened use of physical force. There is an intent element, which, again, does not include the use, attempted use, or threatened use of physical force. Finally,

there is a results element, which could or could not be committed with the use, attempted use, or threatened use of physical force. This is why, under the categorical approach, generically, interstate stalking could be committed without any use, attempted use, or threatened use of physical force. For example, the defendant may have had a prior relationship with the victim, so by merely telling the victim that the defendant will be in his or her area could cause the victim a reasonable fear of death or serious bodily injury. Or the defendant could merely have stalked the victim in a way that harassed the victim and caused the victim to reasonably fear for his or her life. However, this may or may not have been accomplished with the use, attempted use, or threatened use of physical force. As another example, the defendant could have, prior to the interstate stalking, used physical force against the victim, causing the victim to reasonably believe that physical force could be used against him or her again.

*United States v. Minners*, No. 05-CR-0152-CVE-02, 2020 WL 4275040, at

*6 (N.D. Okla. July 24, 2020). More recently, another district court sitting

in Delaware reached the opposite conclusion, rejecting the logic of

*Minners*:

In this Court's view, the hypothesized [scenarios described by the court in *Minners* do] involve at least the threatened use of physical force, when considering all the circumstances. Moreover, the version of the statute applicable here requires that the defendant intend "to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate." It does not, therefore, reach unintentional conduct, as potentially contemplated in the *Minners* hypothetical. If the hypothetical defendant intentionally communicates with the victim in a way that causes reasonable fear of death or serious bodily injury, that communication necessarily involves at least the threatened use of physical force.

*United States v. Bacon*, No. CR 18-75-LPS, 2021 WL 5051364 at *14 (D. Del. Nov. 1, 2021). After closely reviewing the statutory language in effect when this offense was committed, the Court concludes that § 2261A does have as an essential element the use, attempted use, or threatened use of force.

First, the requirement that one must place a person in reasonable fear of death or serious bodily injury to be convicted under § 2261A is not, as Defendants contend, purely a "results" element. In support of that characterization, Defendants rely on *United States v. Al-Zubaidy*, in which the Sixth Circuit explained that 2261A has three elements: "(a) that interstate travel occurred; (b) that Defendant's intent was to injure or harass another person; and (c) that the person he intended to harass or injure was placed in reasonable fear of death or serious bodily injury to herself or a member of her family as a result of that travel." 283 F.3d 804, 808-809 (6th Cir. 2002). But the *Minners* and *Al-Zubaidy* decisions are both distinguishable from the present case for the same reason: both analyzed a prior version of § 2261A. That prior incarnation of the statute was different in a key respect from the version at issue here. The statute reviewed by those courts allowed conviction where an offender travels in interstate commerce and "in the course of, or as a result of, such travel places that person in reasonable fear" of death or serious injury. § 2261A. By contrast, the language of the statute in effect here makes it an offense only when a defendant, travelling in interstate commerce and acting with

the requisite intent, "engages in conduct that" places a victim in such fear of death or injury. This additional language eliminates any doubt that, for conviction under § 2261A, a defendant must not only travel, but also engage in some kind of volitional conduct that places the victim in reasonable fear of death or injury—it is not sufficient that such fear may merely result from the travel itself.

Second, the *Minners* case is distinguishable for another important reason: there, the death resulting element was not implicated. Under Sixth Circuit precedent, crimes requiring proof of serious physical injury necessarily require proof of violent physical force. *United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017)(abrogated on other grounds by *Borden v. United States*, 141 S. Ct. 1817 (2021)). The same logic applies to crimes requiring proof that the defendant's actions resulted in death. *See, e.g., Battle v. United States*, No. 3:14-CV-01805, 2021 WL 1611917 at *7 (M.D. Tenn. Apr. 26, 2021)("under *Verwiebe*, a defendant's actions that result in the victim's death necessarily involve physical force even if the force applied is indirect.").

Though not binding precedent, the First Circuit's recent decision in *United States v. Tsarnaev*, 968 F.3d 24, 104 (1st Cir. 2020) (rev'd in part on other grounds, 142 S. Ct. 1024 (2022)), elucidates how a violation of § 2261A resulting in death is categorically a crime of violence. In the Boston Marathon bombing case, the First Circuit considered whether conspiracy to commit a violation of 18 U.S.C. § 2332f, which criminalizes

13

bombing a public place, constituted a crime of violence, and concluded that § 2332f was "divisible into two branches: one in which there is no "death results" element (and the penalty is up to life in prison), and one in which "death results" is an element (and the penalty can be death). *Tsarnaev*, 968 F.3d. at 103-105. The "death results" enhancement was an "element" of § 2332f because that statute "incorporate[d] this penalty scheme," and because the death results enhancement authorized for a different punishment than a violation of § 2332f that did *not* result in death. *Id*. at 104. Therefore, because, under First Circuit precedent, any offense resulting in death is necessarily a crime involving the use of force, a violation of § 2332f resulting in death was a crime of violence. *Id*. at 104-105 (citing *United States v. Baez-Martinez*, 950 F.3d 119, 132 (1st Cir. 2020)).

The same logic applies here. The penalty provisions of § 2261(b) are "incorporated into" § 2261A in the same manner as were the penalty provisions of § 2332f at issue in *Tsarnaev*. And here, as in that case, the "death results" element contained in § 2261(b) authorizes a longer term of incarceration than a violation of the statute that does not result in death, *see* § 2261(b)(1-5), making that provision an element of the crime. *Burrage v. United States*, 571 U.S. 204, 210 (2014). Finally, in agreement with the First Circuit, Sixth Circuit precedent holds that any crime requiring proof that a defendant's conduct caused serious physical injury necessarily requires the use of violent force—and the same logic holds

14

true for crimes that require proof that death resulted. *See Verwiebe*, 874 F.3d at 261; *Battle*, 2021 WL 1611917 at \*7; *see also United States v. Davis*, No. 18-CR-20085, 2020 WL 4284315, at \*3 (E.D. Mich. July 27, 2020)(Borman, J.)(concluding murder-for-hire and conspiracy to commit murder-for-hire were crimes of violence where death resulted and accepting the argument that "[t]he added element of a resulting death, coupled with the standard element of intent to kill, qualifies the predicate offenses as crimes of violence").

Third, the Court agrees with the *Bacon* court that the hypothetical scenarios proposed by the *Minners* court *do* indeed involve at the very least, an implicit threat of force. *See Bacon*, 2021 WL 5051364 at \*14. For example, the *Minners* court proposes a hypothetical offender who, prior to interstate stalking, uses physical force against a victim, and the victim is therefore put in reasonable fear of death or injury when he or she learns that the offender will be in the victim's area. *Minners*, 2020 WL 4275040 at \*6. In this Court's view, if an offender stalks a victim against whom he has already used physical force in the past, and then, with the intent to intimidate, harass, or place that victim in fear of death, engages in some kind of conduct dangerous or threatening enough to cause a reasonable fear of death or serious injury, it seems clear that such conduct would be an implicit, if not explicit, threat that physical force will be used again.

Ultimately, except for far-fetched hypotheticals involving the forbidden application of "legal imagination," the Court fails to see how an offender acting with the intent to kill, injure, or harass, can "engage in conduct that places a person in reasonable fear of death or serious injury," and from which conduct death does indeed result, without the use or threatened use of physical violence. For these reasons, the Court concludes that interstate stalking resulting in death is a crime of violence, and Defendants' motion to dismiss Count Two must therefore be denied.

### b. Whether Count Three must be dismissed for failure to state an essential element of the offense

Count Three charges defendants with a violation of 18 U.S.C. § 1952(a). Under that statute, "[w]hoever travels in interstate or foreign commerce . . . with intent to (2) commit any crime of violence to further any unlawful activity . . . and thereafter performs or attempts to perform . . . [a crime of violence to further any unlawful activity]" shall be imprisoned for up to twenty years or, if death results, for life. § 1952(a)(2)(B). Defendants argue that Count Three fails to give notice of an essential element, as it does not specifically identify the "crime of violence" the Defendants allegedly committed. The Government responds that Count Three tracks the language of the statute, and meets the requirements of Federal Rule of Criminal Procedure 7 and the relevant Supreme Court precedent.

16

The Constitution imposes two requirements on an indictment: first, that it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Resendiz–Ponce*, 549 U.S. 102, 108 (2007)(quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974). It is "generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *United States v. Coss*, 677 F.3d 278, 288 (6th Cir. 2012) (citation and internal marks omitted).

Here, tracking the language of 18 U.S.C. § 1952, Count Three of the Third Superseding Indictment alleges that:

> On or about December 18, 2016, in the Eastern District of Michigan, and elsewhere, the defendants MICHAEL DEANGELO GRIFFIN, DENNIS CLIFTON EPPS and MARIANO LOZOYA GARCIA, aiding and abetting each other, did knowingly travel in interstate commerce from the area of Birmingham, Alabama to Detroit, Michigan, with the intent to commit violence to further an unlawful activity, that is, conspiracy to distribute and possess with intent to distribute a controlled substance in violation of Title 21, United States Code, Section 846, and thereafter committed and attempted to commit the crime of violence, to further such activity, and the crime of violence resulted in the deaths of Robert Eddins IV and Ricardo Denard McFarlin, all in

violation of Title 18, United States Code, Sections 1952 and 2."

Third Super. Ind., ECF No. 123, PageID.471-72. Defendants cite no authority to explain why Count Three does not meet the Constitutional requirements.

Here, although the indictment does not specify exactly *what* crime of violence the Defendants committed, the indictment places the Defendants on notice of what they are accused of having done, particularly with the addition of the "death resulting" language. Similarly, Defendants do not argue—and it is not clear how they could argue—that the indictment is too vague to protect them from double jeopardy. This case can be analogized to the Sixth Circuit case *United States v. McClellan*, 436 Fed. Appx. 479, (6th Cir. 2011). In that case, several defendants were charged with carrying a firearm during a crime of violence in violation of § 924(c). The predicate offense for the disputed § 924(c) count was a violation of § 1952, which criminalizes travelling in interstate commerce with the intent to commit a crime of violence to further an unlawful activity. In *McClellan*, the indictment was amended at trial, striking from the § 924(c) charge a sentence that specified the crime of violence that the Defendants allegedly committed as part of the § 1952 charge. *Id*. at 487-488. The indictment otherwise tracked the language of the statute. *Id*. at 488. Affirming the district court's decision not to dismiss the indictment for failure to specify a crime of violence, the

Sixth Circuit explained that the disputed count had to be read in the context of the entire indictment. *Id.* Considered in context, the previous § 1952 count in the *McClellan* indictment specified a crime of violence ("robbery and/or burglary") and noted that the crime of violence resulted in the death of a victim. *Id.* This, the Sixth Circuit concluded, was enough to inform the Defendant of the charge against him. Although, as Defendant Epps points out, the *McClellan* indictment was amended to *remove* more detailed language, and thus the defense "could not complain that it lacked notice of the crime of violence" alleged in the original indictment, Epps' Repl., ECF No. 191, PageID.1025, the Sixth Circuit in *McClellan* did not rely on that fact in its analysis.

The same logic applies here. Counts Two and Four of the indictment specify that the Defendants "committed murder . . . that is the unlawful killing of Robert James Eddins IV and Ricardo Denard McFarlin, with malice aforethought[.]" Third Super. Ind., ECF No. 123, PageID.570-73. The disputed Count Three, which Defendants seek to dismiss in these motions, states that the "crime of violence [that the Defendants committed to further unlawful activity] resulted in the deaths of Robert James Eddins IV and Ricardo Denard McFarlin." *Id.* at PageID.471-72. Considered in the context of the entire indictment, the language of Count Three informs the Defendants of the charge against them and allows them to plead double jeopardy. Therefore, Count Three need not be dismissed.

However, at the January 7, 2022 hearing concerning these motions, the Government indicated that it would file a bill of particulars specifying the crime of violence Defendants allegedly committed in Count Three. Filing such a bill would leave no room for doubt that defendants have been given notice of the precise crime of violence being charged in Count Three. As of the date of this Order, no bill of particulars has yet been filed. And while the Indictment in its present form is not constitutionally deficient, a bill of particulars will clarify the issues for trial, and should be filed. With these considerations in mind, the Government is therefore directed to file a bill of particulars within 14 days of the date that this Order issues.

### c. Whether Count Four must be dismissed

Count Four charges Defendants with using or carrying a firearm in the course of a crime of violence—the offense charged in Count Three. Defendants contend that, if Count Three is dismissed—as they argue it must be—then Count Four must be dismissed as well. But for the reasons discussed above Count Three need not be dismissed, so neither must Count Four.

Moreover, the offense outlined in Count Three, a violation of 18 U.S.C. § 1952, does qualify as a crime of violence for purposes of § 924(c). Because § 1952 sets out multiple, alternative elements, it is a divisible statute, and the Court must look to the indictment to determine which part of the statute Defendants are charged with violating. *See Haynes v.*

*United States*, 936 F.3d 683, 690 (7th Cir. 2019). The indictment charges Defendants with violating § 1952(a)(2), which criminalizes travelling in interstate commerce to commit a crime of violence to further unlawful activity, and § 1952(a)(2)(B), which imposes a greater term of incarceration if death results. To be convicted under § 1952(a)(2)(B) in Count Three, the Government must prove that Defendants committed or attempted to commit a crime of violence. *See United States v. Burns*, 298 F.3d 523, 537-38 (6th Cir. 2002); *United States v. Dvorkin*, 799 F.3d 867, 876 (7th Cir. 2015)(explaining that conviction 1952(a) requires that "a defendant carry out or otherwise attempt to accomplish his criminal intent"). As the Seventh Circuit explained in *Haynes*, the elements of that crime of violence are, therefore, incorporated into the § 1952(a) charge itself, and, so long as underlying crime would itself qualify as a crime of violence under § 924(c)—as the murders alleged here would—the § 1952(a) charge may properly support the § 924(c) charge in Count Four. *See Haynes*, 936 F.3d at 692. For these reasons, Count Four need not be dismissed.

> ### d. Whether the Government should be required to elect upon which of Counts Two, Four, and Six it will proceed

Defendant Garcia argues that Counts Two, Four, and Six are multiplicitous, because they charge the same conduct in three separate counts. Defendant Garcia relies on a Sixth Circuit case, *United States v. Vichitvongsa*, 819 F.3d 260 (6th Cir. 2016), for the proposition that a

single act involving a firearm taken in furtherance of two simultaneous conspiracies may only support a single conviction under § 924(c). Garcia Mot., ECF No. 176, PageID.843-44. The Government responds that *Vichitvongsa* applies only to situations where the predicate offenses were simultaneous, and argues that the predicates here were not simultaneous.

In a few limited circumstances, the Sixth Circuit has held that a single act of using or carrying a gun may support only a single § 924(c) charge. *See United States v. Johnson*, 25 F.3d 1335, 1336 (6th Cir. 1994) (deciding the "narrow question" of "whether a defendant may be sentenced to two or more consecutive terms for violating [§ 924(c)] by possessing firearms while simultaneously trafficking in two or more controlled substances" and holding that only one § 924(c) charge could stand); *Vichitvongsa*, 819 F.3d at 269-270. In *Vichitvongsa*, the defendant used the same firearm simultaneously to further two conspiracies: conspiracy to commit Hobbs Act robbery and conspiracy to traffic drugs. In order to obtain drugs to sell, the defendant participated in two armed robberies of drug dealers—acts which were in furtherance of both the Hobbs Act robbery conspiracy and the drug trafficking conspiracy. *Id.* at 265. Ultimately, the *Vichitvongsa* defendant was charged with two counts of conspiring to commit Hobbs Act robbery, two counts of conspiring to traffic drugs, and, because he used of a firearm in both robberies, he was also charged with *four* § 924(c) counts—two for each

act of robbery. *Id.* The *Vichitvongsa* court explained that, although the predicate conspiracy offenses had different elements, "in order for the government to convict a defendant of more than one § 924(c) charge, the defendant must use, carry, or possess a firearm—even if it is the same one—more than once." *Vichitvongsa*, 819 F.3d at 269. Therefore, only one § 924(c) conviction per robbery could be sustained. *Id.* at 264. However, the *Vichitvongsa* court also emphasized the narrowness of its decision. *Id.* at 269. The key post-*Vichitvongsa* inquiry is whether a defendant made "more than one choice to use, carry, or possess a firearm." *Id.* at 270; *United States v. Jackson*, 918 F.3d 467, 494 (6th Cir. 2019) (only one § 924(c) charge was supported where a defendant "made a single choice to 'use, carry, or possess' a firearm in connection with [two] simultaneous carjackings[.]").

At this stage, it would be premature to decide to require the government to elect between Counts Two, Four, and Six based on the holding of *Vichitvongsa*. There may be no *Vichitvongsa* problem, because the predicate offenses charged in Counts Two, Four and Six appear to have taken place over different time periods and involved different objectives. *See United States v. Davis*, No. 18-CR-20085, 2020 WL 4284315 at *4 (E.D. Mich. July 27, 2020)(*Vichitvongsa* was not controlling and both of two § 924(c) counts where valid where indictment charged "one predicate offense [murder for hire] on one date, and one conspiracy offense [conspiracy to commit murder for hire] over a period

of time," and where the government "spell[ed] out the conspiracy count's disparate, multiple activities that occurred on days apart, in addition to the day of the murder."). At this stage, however, it is unknown what the evidence at trial may show regarding the question of whether one or more of the defendants made only one choice—or several separate choices—to use, carry, or possess a firearm.

Whether any of the defendants made a single choice, or more than one choice, to use, carry, or possess a firearm, is a matter to be proved at trial, not resolved on a pretrial motion. *See United States v. Mills*, 378 F. Supp. 3d 563, 585 (E.D. Mich. 2019)(explaining that whether the evidence is sufficient to support only a single 924(c) conviction is a matter to be determined based on the evidence presented at trial); *United States v. Frazier*, No. 3:17-CR-00130, 2019 WL 4242412 at *15 (M.D. Tenn. Sept. 6, 2019)(denying a similar motion without prejudice and explaining that "the proper remedy for multiplicitous counts may include allowing the jury to consider all counts that are reasonably supported by the evidence and addressing any multiple-punishment issues at sentencing by merging overlapping convictions.")(citation omitted) For that reason, Defendant Garcia's motion will be denied without prejudice, and, if the facts adduced at trial suggest that *Vichitvongsa* may be applicable, Garcia may raise the issue at that time.

### e. Whether the sentencing allegations in Count Five should be struck

Because Griffin and several other defendants have prior felony drug convictions, the Government seeks to apply the sentencing enhancement set out in 21 U.S.C. § 841, which provides harsher penalties for defendants who have been convicted of a "serious drug felony." *See* Third Super. Ind., ECF No. 123, PageID.474-75. Therefore, Count Five includes information about Defendant Griffin's prior drug felony conviction— possession with intent to distribute cocaine base. *Id.* Griffin argues that this language is prejudicial and unnecessary. ECF No. 167, PageID.701-702.

Ordinarily, the fact of a prior conviction that establishes an enhancement may be found by the court, even though that fact may increase the penalty to which a defendant may be subject beyond the ordinary statutory maximum. *Apprendi v. New Jersey*, 530 U.S. 466, 490. (2000). But any fact "that, by law, increases the penalty for a crime" *other than* the fact that a defendant has a prior conviction "is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 570 U.S. 99, 103 (2013). Prior to December, 2018, § 841 required only proof of a prior conviction. However, the First Step Act of 2018 now requires three facts to be found for the § 841 enhancement for conviction of a prior "serious drug felony" to apply: (1) that the defendant committed "an offense described in § 924(e)(2) of Title

25

18[;]" (2) for which the defendant served more than a year in prison; and, (3) that the defendant's release from prison was within 15 years of the commencement of the now-charged offense. 21 U.S.C.A. § 802(57).

The parties seem to agree, as does the court, that (1), the existence of a prior conviction, falls within the prior-conviction exception to *Alleyne*, and need not be found by a jury. *See* ECF No. 167, PageID.702. The Government also seems to agree that none of the sentencing facts need to, or indeed should be, included in the indictment presented to the jury for purposes of determining the Defendants' guilt. *See* Gov't. Supp. Br., ECF No. 231, PageID.1641. The other facts, that a defendant served more than a year in prison as a result of that conviction and that the defendant's release from prison occurred within 15 years of the present offense, however, are different and somewhat problematic. The parties argue, and several other district courts have concluded, that one or both of these temporal proximity facts fall outside of the narrow *Apprendi* exception for the "fact" of a prior conviction, and are "elements" under *Alleyne* that must be found by a jury. *See, e.g., United States v. Swinton*, No. 3:19-CV-65-1 (VLB), 2020 WL 1940744 at *3-4 (D. Conn. Apr. 22, 2020). *United States v. Fields*, 435 F. Supp. 3d 761, 764-65 (E.D. Ky. 2020).[3]

---

[3] At least two district courts have reached the opposite result, concluding that none of the three facts must be found by a jury. *United States v. Lee*, No. 7:18-CR-153-FL-1, 2021 WL 640028 at *6-7 (E.D.N.C. Feb. 18, 2021)

At the January 7, 2022 hearing on these motions, the Government indicated that it had proposed a bifurcated trial procedure, consisting of a guilt phase and a sentencing phase. At the Court's request, the government has filed its proposal in writing. *See* ECF No. 231. The Court has reviewed the Government's proposal and, if Defendants and the government agree on this or a similar framework, the Court will entertain a two-phase trial of the sort contemplated by the Government's proposal.

In an effort to allow the parties to resolve this issue in a manner amenable to both sides, the Court will deny Griffin's motion with respect to Count Five without prejudice. If the parties do not agree on a procedure or stipulation for addressing the sentencing allegations prior to the final pretrial conference, Griffin may raise the issue at the pretrial conference and the Court will issue an order to resolve the matter.[4]

_____

(concluding that none of the three facts required by § 841 must be found by a jury because an "inquiry into the 'fact of a prior conviction' may include antecedent findings and issues . . . without running afoul of the Sixth Amendment."); *United States v. Adams*, No. 1:18-CR-507-LMM-AJB, 2021 WL 2325641 at *21 (N.D. Ga. Mar. 17, 2021), report and recommendation adopted in relevant part, 2021 WL 1904680 at *8 (N.D. Ga. May 12, 2021).

[4] As for Griffin's argument that § 841 is unconstitutional in its entirety because § 851—which sets out a procedure for proving the facts of a prior conviction for purposes of § 841—might allow an increased penalty to be applied in a manner that runs afoul of *Apprendi* and *Alleyne*, the Court has found no authority that would render § 841 wholly unconstitutional on that basis. Nor have any of the district courts to have considered the

### f. Discovery Motions

Also before the Court are two motions filed by Defendant Garcia pertaining to the discovery or preservation of certain evidence. The first motion asks the Court to order government investigators to preserve any "rough notes" generated during this investigation. *See generally*, Mot. Regarding Notes, ECF No. 177. The other motion seeks an order requiring the government to disclose "the existence and substance" of any agreements between the government and any co-conspirator in this case. *See generally*, Mot. to Reveal the Deal, ECF No. 178. At the hearing on these motions, the government indicated that it had already directed its agents to preserve their rough notes, and would comply with its obligations to disclose impeachment evidence, including information pertaining to any agreements struck with co-conspirators in this case. Defendant Garcia's counsel indicated at that hearing that this was a satisfactory resolution to the issues presented by these two motions, and therefore the motions will be denied as moot.

## III.   CONCLUSION

For the foregoing reasons, Defendants Griffin and Epps' Motions to Dismiss Counts Two, Three, and Four (ECF Nos. 167, 180) are **DENIED**.

---

interplay between § 841, § 851, and the First Step Act found any reason to declare § 841 unconstitutional in its entirety. And moreover, in any event, § 841 will not be applied in an unconstitutional manner in this case, regardless of which procedural method the parties select or the Court may order to resolve this issue.

The portion of Griffin's Motion regarding the sentencing allegations contained in Count Five is **DENIED WITHOUT PREJUDICE**.

It is **FURTHER ORDERED** that the Government shall file a bill of particulars specifying the crime of violence contemplated by Count Three within 14 days of the date of this Order.

It is **FURTHER ORDERED** that Defendant Garcia's Motion to Dismiss Counts Two, Four, and Six (ECF No. 176) is **DENIED WITHOUT PREJUDICE**.

It is **FURTHER ORDERED** that Defendant Garcia's Motion to Reveal the Deal (ECF No 178) and Motion to Preserve Notes (ECF No. 177) are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: June 8, 2022         s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE