UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES**, | 2:17-CR-20639-TGB-MKM |
| Plaintiff, | HON. TERRENCE G. BERG |
| v. | **ORDER DENYING DEFENDANTS' MOTIONS TO SUPPRESS** |
| **MICHAEL GRIFFIN et al.**, | **(ECF NOS. 170, 172, 174, 181, 182)** |
| Defendants. | |

This criminal case involves charges of drug trafficking, conspiracy, carrying firearms in furtherance of drug trafficking and violent crimes, and murder.[1]

---

[1] The Third Superseding Indictment charges Defendants Michael Griffin, Dennis Epps, and Mariano Garcia with: (1) Interstate Travel with the Intent to Kill, Injure or Harass in violation of 18 U.S.C. §§ 2261A(1) and 2261(b)(1) as well as aiding and abetting the same in violation of 18 U.S.C. § 2; (2) Use and Carry of a Firearm During and in Relation to, a Crime of Violence Causing Death, specifically the offense charged in Count One, in violation of 18 U.S.C. §§ 924(c) and 924(j) and aiding and abetting; (3) Interstate Travel in Aid of Unlawful Activity in violation of 18 U.S.C. § 1952 and aiding and abetting; (4) Use and Carry of a Firearm During and in Relation to, a Crime of Violence Causing Death, specifically the offense charged in Count Three, in violation of 18 U.S.C. §§ 924(c) and 924(j) and aiding and abetting; (5), along with two other Defendants, Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine and Heroin in violation of 21 U.S.C. §§ 846, 841(A)(1), 841(b)(1)(A)(ii), and 841(b)(1)(C); (6) Using and Carrying a Firearm During and in Relation to a Drug Trafficking Crime, specifically the

Defendants Griffin and Epps have filed a number of motions to suppress evidence seized in this case. Specifically,

- Defendants Griffin and Epps move to suppress evidence seized during forensic examinations of a number of cell phones (ECF Nos. 170, 182);

- Defendant Griffin moves to suppress cell-site location information and other records seized pursuant to an order issued by a Michigan judge (ECF No. 172);

- Defendants Griffin and Epps move to suppress cell-site location information seized pursuant to orders issued under 18 U.S.C. § 2703(d) (ECF Nos. 174, 181).

Having reviewed the briefing in this case and heard oral argument on the issues therewithin, the above motions will be **DENIED** for the reasons stated below.

## I. BACKGROUND

The Court incorporates by reference the factual background set out in the Court's Order Resolving Defendants' Pretrial Motions. (ECF No. 238).

---

offense charged in Count Five, and aiding and abetting; and (7) along with one other Defendant, Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (a)(1)(B)(i) and 1956(h).

## II.  LEGAL STANDARD

The Fourth Amendment declares that the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The "core" of the Fourth Amendment is the right of a citizen to be "free from unreasonable governmental intrusion." *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).

Probable cause demands an assessment of whether there is "a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (quoting *United States v. Loggins*, 777 F.2d 336, 338 (6th Cir. 1985)). When evaluating an application and affidavit for a search warrant, the magistrate judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

### III. ANALYSIS

### a. Motions to Suppress Forensic Cell Phone Examinations (ECF Nos. 170, 182)

During the Louisiana stop, police seized six cell phones from the Charger. A Louisiana judge authorized search warrants for each of the devices.[2] Defendants Griffin and Epps now challenge the forensic examination of those phones, arguing that the warrant affidavit was fatally deficient in establishing probable cause to search the phones.

The job of a magistrate evaluating a search warrant application is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "[T]here must . . . be a *nexus* between the place to be searched and the evidence sought." *Id.* (citing *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)) (emphasis in original). In reviewing a magistrate's determination, a court need only ensure that the magistrate had a "substantial basis" for concluding that probable cause existed, *Gates*, 462 U.S. at 238-39, and "an issuing

---

[2] At the hearing held in this matter, counsel for the Government explained that each of the six cell phones were searched pursuant to separate warrants, all supported by the same affidavit. Therefore, parties' arguments regarding the affidavit presented to the Court—which contemplates the search of an iPhone 6 with an IMEI number ending in 7220—are equally applicable to all five warrants, and there is no need for the Court to consider each warrant separately.

magistrate's discretion should only be reversed if it was arbitrarily exercised." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000).

The warrant application at issue here essentially restates the facts of the Louisiana traffic stop and includes a statement of Trooper Beaudoin that the device is "believed to contain evidence" of the crimes of drug possession, possession of a firearm with a controlled substance, and carrying a firearm by a convicted felon, all in violation of various Louisiana statutes. *See* Cell Phone Aff., ECF No. 171-1, PageID.755-58 (filed under seal). Defendants correctly point out that there is little explanation of how Beaudoin formed that belief, such as a statement about Beaudoin's training and/or experience regarding drug interdiction, or other facts or statements connecting the alleged drug trafficking discovered in the Louisiana stop to the cell phone in question. Defendants argue that the warrant is therefore fatally deficient. The question is whether, even though the application did not explicitly draw this connection between the criminal activity described in the application and the phone, the magistrate had a "substantial basis" for concluding such a nexus existed.

A magistrate may "infer a nexus . . . depending upon the type of crime being investigated, the nature of the things to be seized, the extent of an opportunity to conceal the evidence elsewhere, and the normal inference that may be drawn as to likely hiding places." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (citation and internal marks

5

omitted). *United States v. Olaya*, a recent case in this district, illustrates the point as applied to cell phones. No. 15-CR-20200, 2017 WL 1967500, (E.D. Mich. Apr. 19, 2017) (Michelson, J.). In *Olaya*, investigators obtained a warrant to search the phone of suspect who was believed to have participated in a series of home invasions. *Id.* at *1-2. Like this case, the warrant application in *Olaya* "provided facts pertaining to the three home invasions and [the defendant's] suspected participation in those crimes," but the affiant failed to "say[] that based on his training and experience, a group committing a crime is likely to use cell phones to communicate" or otherwise articulate facts that would "tie" the phone in question to the investigation. *Id.* at *5-6.

In *Olaya*, Judge Michelson found that the type of crime described in the affidavit was such that "the gap in [the] affidavit can be bridged by a strong inferential chain." *Id.* at *6. The same logic holds here. The affidavit sets out a factual basis describing the investigation, explaining that Defendants had been arrested while travelling from Texas to Birmingham, Alabama with what police then believed was a kilogram of heroin. Cell Phone Aff., ECF No. 171-1, PageID.756. The affidavit further stated that Bibb, Epps, and Griffin gave conflicting stories about "the length of the trip and when they departed Birmingham." *Id.* While Epps and Griffin both said they were there for several days—but staying in different locations—Bibb eventually admitted that the three had only been in Texas for less than a day. The affidavit noted that a field test

6

performed on the substance found concealed in the vehicle indicated the presence of heroin. *Id.*

From the facts laid out in the warrant application, a magistrate could infer that the three travelers appeared to be connected to drug trafficking, and that their whereabouts and prior communications were undoubtedly relevant to that offense. Courts have recognized the importance of cell phones in coordinating criminal enterprises, particularly drug trafficking conspiracies. *See, e.g.*, *United States v. Gilbert*, 952 F.3d 759, 761 (6th Cir. 2020) (recognizing "numerous cell phones" as "tools of the drug-trafficking trade"); *United States v. Gonzalez*, 512 F.3d 285, 294 (6th Cir. 2008) (same); *United States v. Darden*, 353 F. Supp. 3d 697, 719-20 (M.D. Tenn. 2018) (reaching same conclusion and collecting cases).

Second, the particularized facts suggest the probability that evidence might be found on the phones in question. Defendants were suspected of travelling from Alabama to Texas, apparently to purchase a large quantity of what police then believed to be heroin. It stands to reason that coordinating that travel, communicating with one another and with whomever they acquired the package from, and navigating their route would have involved the use of one or more of the cell phones seized by the LSP. Additionally, the facts laid out in the warrant establish that Griffin and Epps arrived in Houston with Bibb, but then separated from her at some point before reconnecting later in the day. ECF No. 171-1,

7

PageID.756. Such arrangements were almost certainly facilitated by one or more of the cell phones in question, as were, most likely, any meetings or communications that related to the acquisition of the suspected kilo of heroin found in their vehicle.

Finally, the affidavit also disclosed that there were six cell phones, but only three people. *Id*. The unusual number of cell phones (six for three people) suggests potential criminal behavior. *See United States v. Taylor*, 471 F. App'x 499, 516 (6th Cir. 2012) (noting that possession of ten cell phones among three people was "a telltale sign of drug dealing" and collecting cases.). The facts in the affidavit, taken together in context, create a reasonable basis to draw a nexus between this alleged drug trafficking and the phone. In sum, the same sort of "strong inferential chain" that was present in *Olaya* is also found here, connecting the alleged drug trafficking conspiracy at issue to the cell phones found in the vehicle. *Olaya*, 2017 WL 1967500 at *6.

Moreover, even if probable cause were lacking, courts will not suppress evidence "obtained in objectively reasonable reliance on a subsequently invalidated search warrant," *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)), unless "the officer [has] no reasonable grounds for believing that the warrant was properly issued." *Leon*, 468 U.S. at 923. That is, even where a warrant has been issued in the absence of probable cause, evidence seized by an officer relying in good faith on such a

warrant need not be excluded. Here, even if probable cause was lacking, the facts established a "minimally sufficient nexus" between the alleged drug trafficking and the phone to be searched sufficient to support the executing officers' good faith belief that the warrant was valid. *See Carpenter*, 360 F.3d at 596. The affidavit was not "totally lacking in facts connecting" the alleged drug trafficking to the phone, nor were the allegations set out in the affidavit "so vague as to be conclusory or meaningless." *Id.* An officer could have, therefore, reasonably believed in good faith that the affidavit was sufficient to support probable cause.

Defendants point to *United States v. Ramirez*, 180 F. Supp. 3d 491 (W.D. Ky. 2016). The *Ramirez* court held that a warrant to search a suspect's cell phone was not supported by probable cause, and also found the good faith exception inapplicable, where the only "only information in the affidavit indicating any likelihood that evidence of a crime might be found on Ramirez's phone was the fact that he was arrested for an alleged drug conspiracy while he possessed the phone." *Id.* at 495. That case is distinguishable for a critical reason: there, the defendant was merely carrying the phone in question when he was arrested pursuant to an arrest warrant, not while he was actively engaged in the suspected drug conspiracy. Here, the phones were found at the exact moment Defendants were actively participating in the conspiracy—the suspected heroin was present in the car, and was being transported from Texas to Alabama. Indeed, the Sixth Circuit drew just such a distinction in *United*

*States v. Merriweather*, noting that an affidavit established probable cause to search a cell phone where the affidavit alleged that a cell phone was used to facilitate two drug buys and "that the particular cell phone at issue was found in a vehicle containing apparent oxymorphone, the very drugs involved in the conspiracy." 728 F. App'x 498, 506 (6th Cir. 2018). So too here—the cell phones in question were found in the same car as a kilogram of suspected heroin, the very subject of the alleged drug conspiracy. *See also United States v. Lavallis*, 515 F. Supp. 3d 686, 692 (E.D. Mich. 2021) (Michelson, J.) (explaining that a "number of decisions have concluded that probable cause to search a cell phone exists simply because cell phones discovered in proximity to crime or contraband almost invariably contain incriminating evidence."). For these reasons, the affidavit was not deficient, and the evidence seized pursuant to the cell phone warrants need not be suppressed.

### b. Motions to Suppress Cell-site Location Information Seized Pursuant to § 2703(d) Orders (ECF Nos. 174, 181)

Defendants Griffin and Epps argue[3] that certain "Cell-site Location Information" ("CSLI") seized pursuant to an order issued under 18 U.S.C. § 2703(d) should be suppressed, because, as the Supreme Court held in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), collecting a person's detailed CSLI history without a warrant is a Fourth Amendment

---

[3] As with Defendants' briefs regarding the seized cell phones, Griffin and Epps' motions present essentially the same arguments.

violation. Anticipating the Government's good faith argument, Defendants essentially argue that the Assistant United States Attorneys who applied for the now-disputed § 2703(d) orders should have been on notice—at the time the CSLI applications were filed in mid-December, 2017—that the lesser standard imposed by § 2703(d) (identification of "specific and articulable facts showing that there are reasonable grounds to believe" that the records sought are "relevant and material to an ongoing criminal investigation") was unlikely to be upheld by the Supreme Court, and that the Fourth Amendment's probable cause standard should apply. Defendants argue the prosecutors should have known this despite the fact that *Carpenter* had not yet been decided by the Supreme Court.

Defendants argue that the Sixth Circuit's initial decision in *United States v. Carpenter*, 819 F.3d 880 (6th Cir. 2016) ("*Carpenter I*"), which authorized the Government to obtain CSLI under the lesser § 2703(d) standard, was vacated in June, 2017 when the Supreme Court granted certiorari. Defendants also point to a number non-precedential out-of-district decisions in which courts imposed probable cause search warrant requirements for CSLI. Def's. Br., ECF No. 174, PageID.820-21. Similarly, Defendants cite to prior Supreme Court and Sixth Circuit concurrences suggesting that obtaining information like CSLI might be considered a search—the precedent relied upon by the Supreme Court in *Carpenter*. ECF No. 196, PageID.1089-92. Defendants ask the Court to

11

consider the state of the law in December, 2017 and evaluate whether it was reasonable for prosecutors to believe that obtaining CSLI by use of a 2703(d) order was constitutional. *Id.* at PageID.1093. Finally, Defendants argue that the good faith exception should not apply for another reason: the § 2703(d) applications stated that prosecutors believed Griffin had been arrested in Louisiana with a kilogram of heroin, but by the time the § 2703(d) application was filed the Louisiana State Police crime lab had already tested the substance and concluded it was not heroin. ECF No. 174, PageID.821-22.

The government concedes that warrantless collection of Defendants' CSLI was rendered unconstitutional by the Supreme Court's *Carpenter* decision, but argues, predictably, that the good faith exception applies. The government argues that in seeking the § 2703(d) order and complying with the statutory requirements for such an order, it relied on a then-valid statute, and that the various out-of-circuit cases cited by Defendants do nothing to disturb the fact that the relevant portions of the Stored Communications Act were still federal law in December, 2017. ECF No. 198, PageID.999. As for the fact that the seized kilo was later determined not to be heroin, the Government says that, although the Louisiana State Police crime lab had already confirmed the substance was not heroin when the § 2703(d) orders were requested, the LSP did not notify the U.S. Attorney's Office in Detroit of that fact until February, 2018—several months after the 2703(d) applications were filed. *Id.* at

12

PageID.1004. And in any event, the government argues, the validity of the application was not dependent on the presence of heroin. *Id.*

On this question, the weight of authority falls on the Government's side. The purpose of the exclusionary rule is to deter government misconduct, not punish it. *See Davis v. United States*, 564 U.S. 229, 246 (2011). Federal prosecutors in the Sixth Circuit cannot be expected to have complied with out-of-circuit appellate caselaw when the Sixth Circuit had already squarely resolved the question in *Carpenter I*, just three years earlier. While it is true that the Sixth Circuit's decision in *Carpenter I* was vacated when the Supreme Court granted certiorari, all of the case law upon which *Carpenter I* rested remained good law, and the Justice Department had no way of predicting with accuracy how the Supreme Court would rule. In late 2017, the Stored Communication Act explicitly authorized the Government to collect CSLI with a § 2703(d) order rather than a search warrant, and there had been no clear precedential holding otherwise. Further, in other analogous cases, courts have declined to apply the exclusionary rule to evidence gathered by § 2703(d) order before *Carpenter* was decided, including in a number of cases where, as here, the CSLI was obtained after certiorari was granted in *Carpenter*. *See, e.g.*, *United States of Am., Inc. v. Williams*, 2018 WL 3659585 at *2 (E.D. Mich. Aug. 2, 2018) (applying good faith exception to a CSLI 2703(d) order obtained less than a year before *Carpenter* was decided); *United States v. Hammond*, No. 3:18-CR-5 RLM-MGG, 2018

WL 5292223, at *2-4 (N.D. Ind. Oct. 24, 2018), (aff'd, 996 F.3d 374, 384-86 (7th Cir. 2021)) (applying good faith exception to CSLI obtained in January, 2018); *United States v. Bacon*, No. CR 18-75-LPS, 2021 WL 5051364, at *7 (D. Del. Nov. 1, 2021) (applying good faith exception to CSLI obtained less than a month before the Supreme Court's decision in *Carpenter*); *United States v. Ramirez*, 471 F. Supp. 3d 354, 366-67 n.12 (D. Mass. 2020) (applying good faith exception to CSLI obtained in February, 2018).

As for the fact that the substance described in the warrant as heroin was not actually heroin, the inclusion in a warrant application of an inaccuracy—not known to the affiant to be false—is not enough to render a warrant invalid. Here, there is no evidence or indication that the government knowingly or recklessly introduced false information in the CSLI application when it included information from another law enforcement agency that turned out not to be true. On this record, it appears that the affiant presented what he understood to be correct information. *Franks v. Delaware*, 438 U.S. 154, 171 (1978) ("Allegations of negligence or innocent mistake are insufficient" to establish a *Franks* violation). In any event, however, even if the correct information had been included, the facts would have been sufficient to support the § 2703(d) order.

### c. Motion to Suppress Warrant for Cell Site Location Information (ECF No. 172)

Defendant Griffin moves to suppress evidence obtained by the Government pursuant to a court order issued by a Michigan judge which authorized the disclosure of subscriber information, call records, and location information for a cell phone having a number associated with Griffin. Griffin argues that the evidence should be suppressed because the affidavit included in the application lacked sufficient facts, relied on statements from an unreliable informant, did not support probable cause, and was too threadbare to support officers' good faith reliance.

The first issue is that the application requested information pertaining to a cell phone number, but never explicitly identified the target number as belonging to Griffin. Therefore, Defendants argue, the application "offers no facts to connect the identified target cell phone number to any criminal activity." Def's. Br., ECF No.172, PageID.793. Elsewhere, however, the application makes clear that the records being requested belong to Griffin: "[a]ffiant believes that the recovery of Michael Griffin's phone records will show . . . ." CSLI Aff., ECF No. 173-1, PageID.800 (filed under seal). The issuing judge was permitted to make the reasonable inference that, because the affiant explained that the phone records being sought belonged to Griffin, the target phone number belonged to Griffin as well.

Another issue is that the application for a court order seeks both retrospective *and* prospective location and call records. ECF No. 173-1, PageID.798 (seeking information "for the period of June 1, 2016, to date of compliance and extending (60) sixty days past the date of this order"). Different legal standards apply to these various categories of data. As explained in section III.b, *supra*, in January 2017 when this court order was obtained, the Stored Communications Act allowed investigators to obtain historical cell-site location information and call records from telecommunications providers on a showing of "specific and articulable facts showing that there are reasonable grounds to believe" that such records were "relevant and material" to an ongoing criminal investigation. 18 U.S.C. § 2703(d). In *Carpenter*, the Supreme Court held that historical CSLI implicates Fourth Amendment privacy concerns, and that a warrant supported by probable cause was required to obtain such information. 138 S.Ct. 2206, 2223 (2018). But, as discussed above, because a warrant was not required for such information when this order was sought, and because prosecutors and law enforcement could not have been expected to anticipate the Supreme Court's opinion in *Carpenter*, the *Leon* good faith exception applies to any historical CLSI seized pursuant to a properly-issued § 2703(d) order. However, as counsel for the Government conceded at the hearing held on this motion, obtaining *prospective* or real-time cell-site location information required a showing of probable cause even before *Carpenter*. *See, e.g., United States v. Powell*,

16

943 F. Supp. 2d 759, 776-78 (E.D. Mich. 2013)(Murphy, J.) aff'd, 847 F.3d 760 (6th Cir. 2017); *In re Application of the U.S. for an Ord. Authorizing the Disclosure of Cell Site Location Info*., No. 6:08-6030M-REW, 2009 WL 8231744, at *8 (E.D. Ky. Apr. 17, 2009). As to prospective and real-time call records, both before and after *Carpenter*, an order authorizing the installation of pen registers and/or "trap and trace" devices, which capture real-time records of numbers dialed and calls received, may be issued where an investigative officer identifies themselves and their law enforcement agency and "certifi[es] that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency." 18 U.S.C. §§ 3122, 3123.

The application in question here seeks both prospective and historical information, and styles itself both as an "application for [a] search warrant" and an "appl[ication] to the court [for an] order pursuant to [18 U.S.C. §§] 2703(c) and 2703 (d), 3122 and 3123[.]" ECF No. 173-1, PageID.798. As a "court of general criminal jurisdiction of a State authorized by law of that State to issue [search warrants and orders authorizing the use of a pen register or trap and trace device]," *see* 18 U.S.C. §§ 2711, 3127, the Wayne County Third Circuit Court qualifies as a "court of competent jurisdiction," satisfying the requirements imposed for issuance of a court order under § 2703(d) and § 3122(a)(2). *See* Mich. Comp. Laws § 600.151; *People v. Goecke*, 457 Mich. 442, 458 (1998) (describing Michigan circuit court as one of "general jurisdiction . . .

17

having original jurisdiction in all matters not prohibited by law," including criminal cases). In sum, therefore, any *historical* records obtained pursuant to the disputed order need not be suppressed so long as the order was supported by specific and articulable facts showing that there were reasonable grounds to believe that the records sought were relevant and material to an ongoing investigation. Any *prospective* or real-time location records must be suppressed unless there was probable cause to believe that they would reveal evidence of a crime or enough to support a good faith belief by executing officers in the existence of probable cause. Finally, any real-time call number identifying information collected by a pen register or trap and trace device need not be suppressed so long as the affiant identified himself and his agency, and certified that such records would likely be relevant to an ongoing investigation.

In the application, the affiant, Michigan State Police Detective Rick Lutz, detailed the homicides of Eddins and McFarland, and explained that an informant, identified by name, had come forward with information about the murders. According to the affiant, the informant told investigators that Griffin was present at the victim's, (Eddins') home the evening of the alleged killing. ECF No. 173-1, PageID.800. The affiant explained that Griffin's phone records would confirm Griffin's presence at or near Eddins' home. *Id.* According to the affiant, the informant further said that Griffin had called the informant "countless" times

18

admonishing him to "stay silent about the shooting." *Id.* The affiant explained that Griffin's phone records would confirm Griffin's relationship with Eddins as well as with the informant. *Id.* At the outset, this recitation is sufficient to satisfy the low bar imposed by § 2703(d), as it demonstrates that an investigation into the homicides was ongoing, and identifies specific and articulable facts showing that there were reasonable grounds to believe that Griffin's phone and location records would be relevant and material to that investigation. Thus, any retrospective records seized pursuant to the order need not be suppressed. It also satisfies the requirements for a pen register and trap and trace device order under § 3122, and any real-time call records need not be suppressed.

The question of probable cause—necessary to gather prospective CSLI—is far closer. The statements of the informant, if sufficiently reliable, establish that there is a "fair probability" that the records would reveal evidence of a crime. *See United States v. Sheckles*, 996 F.3d 330, 338 (6th Cir. 2021). However, Griffin argues that the informant was not reliable, that the application relies entirely on the statements of the informant, and that the application failed to include sufficient facts to evaluate the informant's credibility. Where an affidavit includes information derived from an informant, a court must consider "the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances analysis." *United States v. Coffee*,

19

434 F.3d 887, 893 (6th Cir. 2006). As the Supreme Court has explained, these elements are not "independent requirements to be rigidly exacted in every case," but instead are "closely intertwined issues that may usefully illuminate the commonsense, practical question" of whether probable cause exists to believe contraband or evidence may be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). A deficiency in either reliability or basis of knowledge "may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id.* at 233.

Defendants correctly point out that the application lacked any statements describing the informant's reputation or history of reliability, such as an indication whether the informant had provided reliable information in the past. Nor did the application say whether the police had corroborated any details provided by the informant, which is another important, but not necessarily required, way of establishing reliability. *See United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005) ("independent corroboration of an informant's story is not necessary to a determination of probable cause."). Finally, the application omitted any explanation as to how the informant had provided the information in question to police, and it is not clear from the affidavit whether the affiant personally spoke to the informant, or whether the information was relayed to him by another investigator, which tends to weigh against reliability. *See United States v. Neal*, 577 F. App'x 434, 444 (6th Cir. 2014)

("Here, [the affiant] did not aver any information about meeting or speaking with [the informant] as it appears from the record he did not ever meet or speak with her directly.").

In reviewing the affidavit, however, one can identify some indicia of reliability. First, this was no anonymous source or confidential informant—the person providing the information was named in the application. The Sixth Circuit has explained that "[s]tatements from a sourced named in a warrant application . . . are generally sufficient to establish probable cause without further corroboration because the legal consequences of lying to law enforcement officials tend to ensure reliability." *United States v. Hodge*, 714 F.3d 380, 384-85 (6th Cir. 2013). While merely naming an informant in a warrant application is not enough by itself to support finding the informant credible, it stands as a significant factor in the requisite "totality of the circumstances" analysis. *United States v. Howard*, 632 F. App'x 795, 801 (6th Cir. 2015). But here there is more. The named informant provided a "strong showing" with respect to the basis of his knowledge: he described how he had been on the phone with Eddins moments before Eddins' death. He also provided specific details about the call, telling investigators that, during that phone call, Eddins said that Griffin had just arrived at Eddins' house, and that "if I [(Eddins)] don't come back to the phone, you know what's up." ECF No. 173-1, PageID.800. *See United States v. Coffee*, 434 F.3d 887, 893 (6th Cir. 2006) ("detailed description of what the informant

observed first-hand" could support informant's reliability) (citation omitted); *but see Neal*, 577 F. App'x at 443 (noting problems in relying only on a previously-unknown informant who provides an uncorroborated statement rich in detail purportedly based on personal knowledge and collecting cases).

The informant also described being told by an associate of Griffin's, who the informant knew, that Griffin had bragged about being involved in Eddins' death. ECF No. 173-1, PageID.800. And finally, he told police that he had personally received "countless" calls from Griffin "demanding that he stay silent about the shooting." *Id.* This substantial and particularized basis of knowledge—the informant was, very nearly, a witness to the alleged murder itself, and had been in contact with Griffin after the alleged killing—compensates for the lack of corroboration or evidence of reliability, particularly when coupled with the fact that the informant is known to the police, and could be prosecuted for providing false information. *See United States v. Miller*, 314 F.3d 265, 269-70 (6th Cir. 2002) (first-time informant was reliable despite no statement of historical reliability where he provided detailed first-hand information, was named in affidavit, drove to location to be searched with police officer, and was subject to prosecution if he had lied); *United States v. Pelham*, 801 F.2d 875, 878 (6th Cir. 1986) ("When a witness has seen evidence in a specific location in the immediate past, and is willing to be

named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence.").

Despite these positives, there remains a problem with the informant's account, however. In his statement, he told investigators that Griffin's father "has a connection at 1138 Sheldon St. in the City of Detroit," and that Griffin, Griffin's father, and a third person met at that address before the alleged killings of Eddins and McFarlin. ECF No. 173-1, PageID.800. These assertions are problematic for two reasons: first, as the parties agree, there is no "Sheldon Street" in the City of Detroit. Gov't. Br., ECF No. 189, PageID.987; Edwards Aff., ECF No. 173-2, PageID.807-8. Second, though the informant may have been referring to 1138 *Selden* street, an address on a real street in Detroit that Griffin's father is indeed associated with, that specific address also has not physically existed since approximately 2001 when, apparently, a housing complex at that address—in which Griffin and his father once lived—was demolished. Edwards Decl., ECF No. 200-1, PageID.1117-19. While this confusing kind of error is not excusable, it is not particularly material: the informant's statement about this meeting itself is not central to the determination of probable cause, and the warrant application would have been sufficient in its absence. But, while reasonable innocent explanations for its inclusion may exist, the presence of such an error does undermine the informant's credibility to some degree.

23

Weighing the detail provided by the known and identified informant supported by a strong basis of knowledge against the doubt created by the "Sheldon St." issue and the subsequent lack of corroboration or any statement about the informant's reliability, the question of probable cause is not an easy one. Defendants challenge the "Sheldon St." information by comparing the source's information to known facts outside the four corners of the affidavit, that is, subsequent research shows there is not a Sheldon Street in Detroit. Yet, also, outside the scope of the warrant, the government points out that "Selden" Street does exist and is in fact associated with Griffin's father, just as the source said. But, again relying on after-the-fact attempts at verification—it turns out that the particular address on Selden Street referenced in the affidavit could not have served as a meeting place for Griffin and the others, because that address was apparently torn down two decades ago. Ultimately, although such inaccuracies are relevant to the question of the reliability of the source, there is no indication that the affiant knew that the informant's statement was inaccurate. And some facts that the source provided that are material to probable cause *were* found to be accurate. For example, the source reports knowing who was responsible for the murder of Eddins—and Eddins was in fact a victim of homicide. The source also says Griffin lived in Alabama—and after-the-fact information shows that this fact was true. Trying to balance all these conflicting facts,

the scales may balance slightly in favor of probable cause, but only barely.

But in any event the inquiry does not end there: as discussed in section II.a, *supra*, the "good faith" exception to the exclusionary rule provides that information seized pursuant to an invalid warrant need not be suppressed where officers reasonably relied on the warrant in good faith. The standard for a finding of good faith is "less demanding" than the probable cause standard. *United States v. White*, 874 F.3d 490, 501 (6th Cir. 2017). All that is required to satisfy this exception is a "minimally sufficient nexus"—that is, "some connection, regardless of how remote it may have been—some modicum of evidence, however slight—between the criminal activity at issue and the place to be searched." *United States v. Reed*, 993 F.3d 441, 451 (6th Cir. 2021) (citation and internal marks omitted). But the good faith principle itself is subject to a number of exceptions. Relevant here, a finding of good faith will not be sustained if an affidavit is—as Griffin argues this affidavit is– "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Def's. Br., ECF No. 172, PageID.793.

An affidavit that is utterly devoid in indicia of probable cause is often referred to as a "bare bones" affidavit. A "bare bones" affidavit is "one that states only suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *White*, 874 F.3d at 496 (internal marks and

citation omitted). The affidavit at issue here was significantly more detailed: the application details information provided by a named informant, who said that he was on the phone with Eddins moments before his death, and that Griffin, the alleged perpetrator, had called the informant numerous times after the alleged killing and told him to keep quiet. And moreover, there is no indication that police had any indication that the "Sheldon St" address was mistaken. While more investigative steps to corroborate the named informant's statements could have, and perhaps should have, been taken and detailed in the affidavit, what *is* present clearly establishes the "minimally sufficient nexus" contemplated by the good faith standard, and the detailed, first-hand account of the named informant is enough to provide "*some* underlying factual circumstances regarding veracity, reliability, and basis of knowledge" such that the affidavit is hardly so "bare bones" or otherwise facially deficient that the executing officers could not reasonably have believed that it supported probable cause. *Id.* at 496-97. *See also United States v. Martin*, No. 4:14-CR-24, 2015 WL 3627038 at *7-8 (E.D. Tenn. June 9, 2015)(affidavit based on named informant's statement that her boyfriend was dealing drugs, description of drugs to police, and provision of other details about drug dealing to police narrowly supported probable cause and clearly supported application of good faith exception, despite lack of any historical reliability or police corroboration).

Griffin also argues for the first time in his reply that the issuing judge acted arbitrarily by applying an erroneous standard less than probable cause (that is, the § 2703(d) "reasonable grounds" standard), and by approving the warrant application even though it erroneously referenced "larceny from an auto" and "armed robberies" as crimes under investigation, neither of which pertain to the investigation into Griffin or the other Defendants. Def's. Repl., ECF No. 200, PageID.1107-1110. Putting aside that these arguments may arguably be waived because Griffin did not raise them in his original motion, they do not persuade.

While the erroneous statements that obtaining the records sought will aid in the prosecution of "Larceny from an Auto" or "the aforementioned armed robberies and homicide" reflect sloppiness on the part of the affiant, it is not clear how they could have prejudiced Griffin. The affidavit is clear throughout that the investigation pertains to "the homicides of Robert Eddins IV and Richard McFarlin." ECF No. 173-1, PageID.799. There is no mention in main portion of the affidavit by Trooper Rick Lutz of any "larceny from an auto" or "armed robbery." These typographical errors, contained in what appear to be the "boilerplate" sections of the application, *See Id.* at PageID.801, do not require suppression. And regardless of whether the issuing judge erroneously applied the "reasonable grounds" standard to the affiant's request for *prospective* cell-site location information, that error was immaterial as long as the warrant affidavit actually supported probable

27

cause to believe that evidence of a crime would be found in that prospective information, or a good faith belief by the executing investigators that such probable cause existed. And in this case, it did. Therefore, the warrant need not be suppressed on that basis.

In sum, the affidavit presented in support of this warrant clearly identified specific and articulable facts showing that there were reasonable grounds to believe that the historical cell-site location and call records sought were relevant and material to an ongoing investigation, authorizing the seizure of the historical records sought. The affidavit also supported the issuance of an order authorizing the use of a pen register and/or trap and trace device to capture real-time call information. And as to prospective CSLI records, even if the affidavit presented in support of this warrant fell short of establishing probable cause, it was sufficient to satisfy the *Leon* good-faith exception to the exclusionary rule. Therefore, evidence seized pursuant to the order need not be suppressed.

## IV.   CONCLUSION

For the foregoing reasons, Defendants Griffin and Epps' Motions to Suppress evidence seized during forensic examinations of a number of cell phones (ECF Nos. 170, 182) are **DENIED**. Griffin's Motion to suppress cell-site location information and other records (ECF No. 172) is **DENIED**. Griffin and Epps' motions to suppress cell-site location

information seized pursuant to orders issued under 18 U.S.C. § 2703(d) (ECF Nos. 174, 181) are **DENIED**.

      **IT IS SO ORDERED.**

Dated: June 8, 2022      s/Terrence G. Berg
                                      TERRENCE G. BERG
                                      UNITED STATES DISTRICT JUDGE